UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONTE A. R., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 19 C 2363 <br><br> Magistrate Judge Sunil R. Harjani |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donte A. R. appeals the Commissioner's final decision denying his application for disability insurance benefits. Donte requests a favorable decision or remand, and the Commissioner moves for summary judgment. For the reasons and to the extent stated herein, the Commissioner's decision is reversed, Donte's request for remand is granted in part, and the Commissioner's motion for summary judgment [24] is denied.

## BACKGROUND

Donte, a forty-five year-old man with a GED, claims disability from June 6, 2015. On that day, Donte was in a car accident where he was rear-ended while stopped at a red light. Donte hit his head on the steering wheel, and his car was totaled. As a result of the accident, Donte suffers from headaches and a seizure disorder for which he takes two anti-seizure medications. Donte applied for benefits in April 2016, alleging an inability to work due seizures and cervical sprain. He has been advised not to drive or operate heavy machinery due to seizures. Donte's various past jobs have including driving or working around moving machinery. Donte is insured through December 31, 2020.

Donte's claim was initially denied in October 2016, and upon reconsideration in February 2017. (R. 82-105). On December 29, 2017, he appeared and testified at a hearing before ALJ Deborah M. Giesen. *Id*. at 31-81. The ALJ also heard testimony from vocational expert ("VE") Kari A. Seaver. *Id*. at 70-80. On April 25, 2018, the ALJ issued a decision denying Donte's application. *Id*. at 15-26. The decision followed the required five-step evaluation process. 20 C.F.R. § 404.1520. At step one, the ALJ found that Donte had not engaged in substantial gainful activity since June 6, 2015, the alleged onset date. *Id*. at 17. At step two, the ALJ found that Donte had the severe impairments of seizure disorder and headache disorder. *Id.* at 18. The ALJ found that Donte also had non-severe cervical degenerative disc disease. *Id*. At step three, the ALJ determined that Donte did not have an impairment or combination of impairments that met or equaled a list impairment, including Listing 11.00 (neurological disorders). *Id.* at 18-19. The ALJ then concluded that Donte retained the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 404.1567(b), except no work around hazards, such as unprotected heights, open flames, or dangerous moving machinery; no climbing ladders, ropes, or scaffolds; and no operation of a motorized vehicle. *Id*. at 19-23.

Based on this RFC, the ALJ determined at step four that Donte could not perform his past relevant work as a hostler driver, dump truck driver, box truck driver, forklift operator, molding machine operator, steel forming machine operator, and a composite job at a bus company. (R. 23-25). At step five, the ALJ found that a significant number of jobs exist in the national economy that Donte can perform, including hand packer, assembler, and sorter. *Id*. at 25-26. The ALJ thus concluded that Donte was not disabled. *Id.* at 26. The ALJ's decision became the final decision of the Commissioner on February 7, 2019, when the Appeals Council denied Donte's request for review. *Id*. at 1-6; *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2017).

**DISCUSSION**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 US 197, 229 (1938)). "Although this standard is generous, it is not entirely uncritical." *Steele*, 290 F.3d at 940. Where the Commissioner's

decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Id.*

The ALJ found Donte not disabled at step five of the sequential analysis because he retains the RFC to perform other jobs that exist in the significant numbers in the national economy. Donte raises three main arguments in favor of reversal of the ALJ's decision: (1) the ALJ's RFC was not supported by substantial evidence because she failed to account for the frequency of Donte's seizures and any resulting time off task; (2) the ALJ's subjective symptom assessment was flawed; and (3) the ALJ failed to give appropriate weight to his treating physician's and treating neurologist's opinions. Because the ALJ erred in her assessment of Donte's seizure disorder and in the subjective symptom determination, remand is required. The Court need not address Donte's remaining argument concerning his treating physicians' opinions.

**A.     RFC Assessment**

Donte first challenges the RFC finding as flawed because it did not adequately account for his seizures. "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The determination of an individual's RFC should be based on all relevant evidence in the record. *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("The RFC assessment must be based on *all* of the relevant evidence in the case record."); *see also* 20 C.F.R. § 404.1545(a)(1). Moreover, it is well established that an ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

Donte contends that the ALJ's RFC finding was not supported by substantial evidence because the ALJ failed to account for the frequency of seizures Donte would experience and any time off which would result. The ALJ found that Donte suffered from the severe impairments of seizure disorder and headache disorder. (R. 18). At step three, the ALJ made a determination that Donte's seizures did not occur at the frequency required by Listing 11.00 for neurological disorders. To meet Listing 11.02, one must show "epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D." 20 C.F.R. Part 404, Subpt. P, App. 1, § 11.02. As to frequency, Listing 11.02 requires: (A) generalized tonic-clonic seizures occurring at least once a month for 3 consecutive months despite adherence to prescribed treatment; (B) dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; (C) generalized tonic-clonic seizures occurring at least once every two months for 4 consecutive months despite adherence to prescribed treatment with an accompanying marked limitation in a functional area; or (D) dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment with an accompanying marked limitation in a functional area. *Id*. When evaluating the requirements of Listing 11.02, the ALJ did not make explicit findings with respect to the frequency or types of seizures Donte experiences. With regard to the number of Donte's seizures, the ALJ simply stated: "Nor does the record document the frequency of seizures that meets the requirements of the listing." (R. 19). In reaching that conclusion, the ALJ did not cite any medical evidence in the record or explain how she weighed the evidence.

In determining Donte's RFC, the ALJ noted that Donte testified he experiences approximately six seizures per month. (R. 19). The ALJ recounted Donte's statements to providers regarding the frequency and types of seizures as follows:

5

> Specifically, in November 2015, the claimant visited the emergency room, reporting that he had blacked out. The claimant further reported that he was experiencing episodes of blurred vision, loss of consciousness, and twitching multiple times per day. Also in November 2015, the claimant told Dr. Ro he had had 3 seizures since his October visit. Dr. Ro increased the claimant's Keppra dosage. In January 2016, the claimant told Dr. Ro he was having more seizures, some in his sleep, but some during the daytime. In March 2016, the claimant reported to Dr. Davis that he was having daily seizures. In April 2016, the claimant told Dr. Ro that he experienced 5 or 6 seizures each month. In May 2016, the claimant told Dr. Davis that he had 11 seizures over the course of two days earlier that month. Finally, also in May 2016, the claimant reported to Dr. Stein's office that he was having 2 to 3 seizures per day, as well as many at night. The claimant also alleged urinary incontinence for the first time.

*Id*. at 21. The ALJ concluded that "the evidence establishes underlying medical conditions capable of producing some limitations, [but] substantial evidence of record does not confirm the disabling limitations alleged by the claimant." *Id*. at 23. To support her conclusion, the ALJ pointed out: "Despite the claimant's reports of frequent seizures, multiple brain MRIs and CT scans were negative, and the EEGS were repeatedly normal, showing no epileptiform or seizure activity." *Id*. at 21.[1] The ALJ also pointed out that the physical examination findings from Drs. Davis and Ro were repeatedly unremarkable. *Id*. The ALJ noted that Donte told Dr. Davis in September 2016 that his seizures were under control. *Id*; *see also id*. at 21 (citing Exh. 12F/14-15 and noting physical examination on 6/5/2017 was unremarkable); *id*. at 22 (citing Exh. 11F/4 & 6 and noting EEGs in 2017 were normal).

---

[1] In fact, as the ALJ acknowledged earlier in her decision, an October 2015 EEG was abnormal, showing isolated generalized spike and wave discharges, consistent with a seizure disorder. (R. 20, 306). Further, the ALJ neglected to mention that although Donte's treating neurologist interpreted a week-long inpatient video EEG at Rush Hospital as predominantly normal, there was "very rare single generalized polyspike and slow wave discharges intermittently associated with myoclonic jerks of the neck and extremities, which were much more often observed on video without EEG correlate." *Id.* at 479. One of the doctor's who observed the week-long EEG study opined that some of the EEG findings were "suggestive of a possible predisposition to epilepsy." *Id*. at 473. Another treating neurologist noted that Donte's inpatient video EEG monitoring showed "rare epileptiform discharges, but no frank seizures." *Id*. at 483.

The ALJ's hypothetical question posed to the VE included the limitations set forth in the RFC. (R. 75, 78-79). The VE testified that a person who is off-task for more than 15 percent of the workday or who misses more than one and a half days per month or 18 days in a year would not be competitively employable. *Id*. at 76. In response to a question posed by Donte's attorney regarding the impact of recurring seizures in the workplace, the VE testified that seizures happening on a weekly basis in the work setting would not be tolerated. *Id*. at 77-78. The ALJ noted the VE's testimony that "recurring seizures, for example, on a weekly basis or several times each month" would eliminate all competitive work. *Id*. at 26. However, the ALJ concluded that the "record as a whole does not support that claimant would have seizures at the frequency outlined in the representative's hypothetical." *Id*. Thus, the ALJ rejected Donte's testimony regarding the alleged frequency of seizures, but she did not address the precise frequency of seizures in developing the RFC or in the hypothetical posed the VE.

Contrary to Donte's argument that the ALJ did not account for him having any seizures, the ALJ accounted for certain aspects of his seizure disorder in the RFC and accompanying hypothetical question to the VE. The ALJ accepted the fact that Donte suffers from a seizure disorder and acknowledged that his seizure and headache disorders warranted certain exertional, postural and environmental hazards and precluded him from operating motorized vehicles. (R. 18-19, 23). Specifically, the ALJ stated that she accounted for Donte's headaches and seizures by limiting him to no exposure to workplace hazards such as unprotected heights, open flames or dangerous moving machinery, no climbing of ladders, ropes, or scaffolds, and no operating of a motorized vehicle. *Id*. at 19, 23. The ALJ failed to make a precise finding about the frequency of Donte's seizures, but she made clear she did not believe Donte experiences seizures on a weekly basis or several times a month. *Id*. at 26. Notably absent from the ALJ's decision is a discussion

7

of how Donte's seizures would affect his ability to work in terms of time off-task or days he would miss from work. Thus, the Court is unable to assess whether the ALJ even considered the VE's testimony on these issues. The Court agrees with Donte that once the ALJ determined that his seizure disorder was a severe impairment, the ALJ should have acknowledged the VE's testimony regarding time-off task and absenteeism and explained why the RFC did not need to account for those limitations. *Justin v. Berryhill*, 2019 WL 2417423, at *5-7 (N.D. Ind. June 7, 2019); *Steele*, 290 F.3d at 941 (ALJ must build a "logical bridge from the evidence to her conclusion.").

The main problem with the ALJ's analysis lies in her failure to address the possible psychogenic nature of Donte's seizures, which could have supported the reported frequency of Donte's seizures even in the absence of certain corroborative objective evidence. "Pseudoseizures, also known as psychogenic seizures, nonepileptic seizures, and paraoxysmal nonepileptic episodes (PNES), resemble epileptic seizures but are not attributable to epilepsy or abnormal electric activity in the brain." *Boiles v. Barnhart*, 395 F.3d 421, 422 (7th Cir. 2005). Rather, pseudoseizures "are typically attributed to an underlying psychological disturbance." *Id*. "Some symptoms of a pseudoseizure disorder can be treated with medication, but psychological therapy, not medication, appears to be the preferred course of treatment." *Id*. Although "pseudoseizures are not caused by epilepsy, they are 'real.'" *Id*. at 424.

In discrediting Donte's testimony about the frequency of his seizures and determining the RFC, the ALJ focused her analysis largely on certain normal testing and examination findings, but ignored other relevant evidence regarding the possible psychogenic nature of some of Donte's seizures. The record reveals Donte has been diagnosed with epileptic seizures and possible pseudoseizures caused by psychological factors. On October 12, 2015, Donte met with Dr. Felise S. Zollman, a general neurologist at Rush University, for a neurology initial evaluation. (R. 360-

65). Dr. Zollman's impression was, among other things, that Donte "appear[ed] to be experiencing psychological distress, as evidenced by his tearfulness and flat affect." *Id*. at 364. Dr. Zollman suspected Donte was depressed and recommended a referral to psychology, but Donte declined at that time. *Id*. A month later, on November 16, 2015, Dr. Zollman examined Donte and again noted that he appeared to be experiencing psychological distress. *Id*. at 369. She suspected Donte was depressed, but "he [wa]s resistant to the suggestion." *Id*.

Donte was admitted to Rush's epilepsy monitoring unit from February 8, 2016 through February 15, 2016. On February 10, 2016, Christopher Stewart, Ph.D., conducted an inpatient neuropsychological examination of Donte. (R. 406-07). The Personality Assessment Inventory results suggested a "preoccupation with physical functioning and a tendency to express distress through somatic symptoms." *Id*. at 407. Dr. Stewart's evaluation "suggest[ed] that psychological factors are playing a role in [Donte's] medical presentation." *Id*. Dr. Stewart further noted that his impression "d[id] not rule out the possibility that underlying medical issues might explain some or all of his symptoms." *Id*. Psychotherapy was recommended to explore the relationship between stress and physical symptoms and to develop adaptive coping strategies. *Id*.

On February 16, 2016, Donte was seen by Dr. Michael A. Stein, an epileptologist and neurologist at Rush, for a follow-up visit. Dr. Stein's assessment was:

> After several days of cVEEG monitoring it remains uncertain if he has psychogenic non-epileptic seizures (PNEs), epileptic seizures, or a combination of both. He has very rare interictal epileptiform activity in generalized distribution; however, his habitual myoclonic jerks are non-epileptic. Unfortunately, his convulsive episodes were not observed during recent stay. In summary, he has neuropsychological profile consistent with a tendency for somatization which supports PNESs, but the very rare interictal epileptiform discharges seen during cVEEG raise the possibility of comorbid epilepsy. Until his habitual convulsive episodes are observed with video-EEG it will be difficult to make this determination with certainty.

9

(R. 481). Among other recommendations, Dr. Stein wrote: "I reiterate recommendation of seeing a therapist but he is not receptive to this. On further discussion, he said if it is close to his house he would do this." *Id*. A month later, Donte returned for a follow-up visit with Dr. Zollman. Following a review of Donte's history, Dr. Stewart's neuropsychological evaluation, and a neurological examination, Dr. Zollman's impression was "epilepsy with a possible component of psychogenic non-epileptic seizures as well." *Id*. at 486. Dr. Zollman concurred with "Dr. Stewart's neuropsychological assessment: the patient does appear to be suffering from a mood disorder, but he has been resistant to suggestions from myself and others to seek counseling." *Id*.

On May 25, 2016, Donte followed-up with Dr. Antoaneta J. Balabanov, an epileptologist and neurologist at Rush, as Dr. Stein had relocated. (R. 480, 487-90). Dr. Balabanov recorded in the history of present illness section of her report: "Seizures provoked by stress." *Id*. at 487. Dr. Balabanov also reviewed a video of three of Donte's seizures recorded by his girlfriend. *Id*. Dr. Balabanov noted that all three recorded seizures appeared to be non-epileptic in nature. *Id*. at 490. Dr. Balabanov discussed the neuropsychological testing results with Donte, and the plan was for him to schedule counseling. *Id*. Donte returned to his treating neurologist Dr. Young Ro in November 2016. *Id*. at 560-63. Following a review of symptoms, history, and neurological exam, Dr. Ro noted his impression as "seizure disorder, may have some pseudoseizures as well." *Id*. at 562.

Donte met with Dr. Surendra Gulati, a neurologist at the Neuroscience Institute, on September 6, 2017. Dr. Gulati noted that Donte's "evaluation at Rush could not differentiate between nonepileptic and epileptic spells, though possibility of nonepileptic spells was raised. Neuropsychological testing suggested somatoform disorder or somatoform presentation." (R. 582). After reviewing Donte's history and recent testing and conducting a general examination,

10

Dr. Gulati wrote: "I am still unclear at this time how much of these spells are epileptic or nonepileptic." *Id*. at 582. She increased Donte's Keppra dose to 2000 mg twice a day and advised him to contact Rush for a reassessment. *Id*.

On September 21, 2016, Donte underwent a physical consultative examination with Dr. Carolyn Hildreth. (R. 497-500). Upon physical examination, Dr. Hildreth noted that Donte "appeared to have psychomotor retardation in terms of his movements and his speech as well as his thought pattern." *Id*. at 498. She wrote that "[h]e was very slow with all of his responses." *Id* at 498-99. Further, on a mental status examination, Donte was not oriented to the date, telling Dr. Hildreth that it was "Tuesday, October 2015 or 2016." *Id*. at 499. Donte was only able to name the last 2 presidents and he could not calculate how many nickels were in $1.15, stating it would be "43." *Id*. Dr. Hildreth observed that it was "not clear that [Donte] is capable of responsibly managing funds in his own interest." *Id*.

Finally, Donte saw William Skoubis, Psy.D. for a formal mental status evaluation in October 2016. (R. 556-59). Dr. Skoubis wrote: "Prior to evaluating the claimant, I had the opportunity to review the face sheet from the Bureau of Disability Determinations which listed the allegations as seizures and cervical strain. These were the only documents available for review." *Id*. at 556. The Social Security Regulations, however, require that a consultative examiner be given any necessary background information about the claimant's condition. 20 C.F.R. § 404.1517 (stating "[i]f we arrange for [a consultative] examination or test, ... [w]e will also give the examiner any necessary background information about your condition."). Without reviewing Donte's medical records, Dr. Skoubis concluded that "[o]ther than some situational reactiveness or possibly characterological social skill deficit, there was no evidence of psychological disorder." (R. 558).

11

Despite this line of evidence, the ALJ failed to acknowledge evidence that Donte's seizures may be psychogenic in nature as well as epileptic. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (ALJ may not "select and discuss only that evidence that favors h[er] ultimate conclusion."). The evidence of psychogenic seizures is significant because the ALJ's denial was based primarily on certain "unremarkable testing" results, although pseudoseizures are not subject to objective testing (R. 21-23). *Moon v. Colvin*, 763 F.3d 718 (7th Cir. 2014), is illustrative. In *Moon*, the Seventh Circuit recognized that "[n]o doctor ever suggest that the MRI evidence meant anything about Moon's migraines, and for good reason. Doctors use MRIs to *rule of other possible causes of headache*—such as a tumor—meaning that an unremarkable MRI is completely consistent with a migraine diagnosis." *Id.* at 722. Like in *Moon*, no doctor here indicated that "unremarkable testing" was inconsistent with Donte suffering from pseudoseizures which are stress-related or psychological in nature. Indeed, unremarkable objective testing is entirely consistent with a pseudoseizure diagnosis because "psychogenic seizures do not show up on objective testing such as an EEG, CT, or MRI." *Amy S. v. Saul*, 2019 WL 7288894, at *5 (N.D. Ind. Dec. 30, 2019); *Boiles*, 395 F.3d at 424 ("ALJ did not cite any evidence to contradict Dr. Stump's opinion that a negative EEG . . . was perfectly consistent with Boiles's type of [pseudoseizure] disorder."). The ALJ's reliance on the absence of objective test results to reject the alleged frequency of Donte's seizures without recognition of possible psychogenic seizures was an insufficient basis on which to assess the frequency of Donte's seizures in determining the RFC.

In sum, by emphasizing certain normal objective testing and physical examination findings, the ALJ focused too narrowly on one aspect of Donte's case, disregarding considerable evidence of possible nonepileptic seizures which are psychological in nature. It is not apparent whether the ALJ considered such evidence and found that it did not support the reported frequency of Donte's

seizures or whether the ALJ simply failed to consider the evidence altogether. *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Without any discussion . . . this court has no idea what the ALJ thought about this evidence."); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) (when the ALJ fails to mention relevant evidence, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.") (citations omitted). Without addressing the evidence regarding pseudoseizures, it is thus unclear whether the ALJ properly considered all the relevant evidence of record in determining Donte's RFC. Because consideration of all relevant evidence concerning the frequency of Donte's seizures is critical in determining his RFC, remand is required for the ALJ to more thoroughly discuss and evaluate the full scope of medical evidence regarding pseudoseizures. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) ("If the ALJ were to ignore an entire line of evidence, that would fall below the minimal level of articulation required."); *Walters v. Astrue*, 444 F. App'x 913, 917 (7th Cir. 2011) ("when there is reason to believe that an ALJ ignored important evidence—as when an ALJ fails to discuss material, conflicting evidence—error exists.").

Two additional related issues warrant consideration on remand. *First*, the Court notes that the ALJ failed to make a precise finding about the frequency of Donte's seizures. Whether Donte's seizure disorder meets or equals a listing at step three hinges in part on their type and frequency. The type(s) and number of seizures the ALJ believes Donte is actually experiencing must be explicitly determined on remand. *See Boiles*, 395 F.3d at 427 (noting ALJ made no finding about the frequency of claimant's seizures and whether claimant's "pseudoseizures are of equal medical significance to epilepsy will depend in part upon how frequently they occur; thus the record must be more developed on this point."); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("All the ALJ ever said is that he disbelieved Barnett's testimony concerning the number of seizures she

13

is experiencing; he never affirmatively determined how many seizures he believed Barnett actually experienced. And, thus, we cannot discern if the ALJ ever considered whether Barnett's impairment equals Listing 11.03 despite her assumed lack of credibility."). Moreover, the issue regarding the nature and number of Donte's seizures is complex and on remand, the record should be further developed if necessary, including asking Donte's treating neurologist(s) to complete a Seizures Medical Source Statement and/or calling a medical expert in this case. *Boiles*, 395 F.3d at 427 ("At the very least, the ALJ was obligated to solicit more evidence if he believed that the frequency of the seizures, as reflected in the record, was unclear."); *Moon*, 763 F.3d at 722 ("ALJs are required to rely on expert opinions instead of determining the significant of particular medical findings themselves.").

*Second*, at step three, the ALJ evaluated Donte's seizure disorder under Listing 11.00. The regulations provide, however, that "psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02. We evaluate psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 11.00(H)(1); *see also Boiles*, 395 F.3d at 427 ("Alternatively, pseudoseizures may be more analogous to an impairment described in a listing other than 11.02, such as one that describes a psychological impairment."). Accordingly, upon remand, the ALJ should consider whether Donte has a psychological impairment and evaluate his seizures under all applicable mental disorder listings.

**B.     Subjective Symptom Evaluation**

Donte next contends that the ALJ failed to properly consider his subjective symptom statements, including his testimony about the frequency of his seizures. Without acknowledging any of the specific reasons articulated by the ALJ, the Commissioner generally argues that the ALJ

14

considered Donte's allegations about his symptoms, but properly weighed them against the "predominately normal objective medical findings of record, plaintiff's inconsistent statements about his functioning, and other evidence in the record." Doc. 24 at 6. Along with the ALJ's incomplete discussion of the medical evidence, the Court finds the ALJ provided insufficient reasons for discounting Donte's subjective symptom statements.

Donte testified at the administrative hearing that he has about six seizures a month. (R. 56). During his seizures, Donte shakes, bites the side of his jaw and sometimes his tongue, urinates on himself, and losses consciousness. *Id*. After a seizure, Donte feels sick and does not "know what's really going on." *Id*. He then takes his medicine and lays down. *Id*. He also listens to music to try to calm down. *Id*. at 57. Donte stated that he goes back and forth between staying with his girlfriend or his mother depending on their work schedules because he does not want to be alone if he has a seizure. *Id*. at 52-53, 57. He further testified that his anti-seizure medications have not been effective and his neurologist has continued to increase his dose of Keppra. *Id*. at 58. Donte testified that he cannot drive because of his seizures. *Id*. at 57.

The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is "patently wrong," meaning "the decision lacks any explanation or support." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Murphy*, 759 F.3d at 816. When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (Oct. 25, 2017). An ALJ's "failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is ground for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015). Finally, "[a]n

erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Covlin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

The ALJ stated that Donte's medically determination impairments could reasonably be expected to cause the alleged symptoms, "however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other in the record for the reasons explained in this decision." (R. 20). The ALJ then considered the medical evidence and Donte's reports of his seizures. *Id*. at 20-22. The ALJ offered five rationales for discounting Donte's testimony. *Id*. at 22. Notably, the Commissioner does not attempt to defend any of the specific reasons provided by the ALJ in support of her subjective symptom determination, effectively conceding that they are insufficient. *Dzurko v. Colvin*, 2013 WL 6822659, at *7 (N.D. Ill. Dec. 26, 2013).

As for her first reason, the ALJ stated that Donte "has described daily activities and circumstances that are not limited to the extent one would expect given the functional deficits he alleges, which is inconsistent with his statements concerning the intensity, persistence and limiting effects of his symptoms." (R. 22). Other than using a computer to check email, an activity discussed below, the ALJ did not specify which daily activities conflict with Donte's symptoms or offer any further explanation. The ALJ's failure to explain why she believed Donte's daily activities are inconsistent with his specific symptom allegations provides insufficient support for her assessment. *Dowlen v. Colvin*, 658 F. App'x 807, 811 (7th Cir. 2016) ("ALJ did not explain how [claimant's] daily activities undermine the credibility of her complaints, and such conclusion is not self-evident."); *Zurawski*, 245 F.3d at 887 (ALJ must "explain the 'inconsistencies' between [a claimant's] activities of daily living ... complaints of pain, and the medical evidence.").

16

The ALJ's second reason for not crediting Donte's testimony—that Donte "began reporting seizure activity only after Dr. Ro advised [him] that his October 2015 EEG was abnormal"—is factually erroneous. (R. 22). The record indicates that the October 22, 2015 EEG was ordered because on October 20, 2015, Donte complained of "headache, dizziness, blurred vision, and pain the eyes" and said he was "experiencing whole-body spasms and shakes during sleep." *Id*. at 303, 306. Dr. Ro wrote: "We will get an EEG to rule out any seizure." *Id*. at 303, 305. Two days later the EEG was done and it was abnormal, "due to isolated generalized Spike, polyspike and wave discharges." *Id*. at 306. The ALJ also implied that Donte was inconsistent about when his seizures began. *Id*. at 22. The ALJ noted that at the administrative hearing, Donte "testified that his seizures started when he was in the June 2015 car accident," but he first reported seizure activity to Dr. Ro in October 2015. *Id*. The ALJ's implication is not supported by the record. The ALJ does not cite to a specific portion of the hearing where Donte testified that he started having seizures right away after the accident and Dr. Ro's October 22, 2015 progress notes do not indicate when Donte's seizures began.

For the third reason for discounting Donte's subjective symptom allegations, the ALJ stated that Donte's "description of his seizures was inconsistent" because he initially denied bladder incontinence but then in May 2016, alleged bladder incontinence as a symptom associated with his seizures. (R. 22). It is unclear whether these descriptions are actually inconsistent, especially given that Donte may be having both epileptic and nonepileptic seizures. Even after Donte reported bladder incontinence, his providers continued to diagnosis and treat his seizures including increasing his anti-seizure medication dosage. *Id*. at 582, 603. None of the physicians who treated Donte suggested that his descriptions of his seizures were inconsistent or inconsistent with a diagnosis of a seizure disorder.

17

With respect to the fourth reason, the ALJ noted that Donte appeared at the hearing wearing sunglasses and testified that his headache and seizure disorders made him sensitive to bright lights. (R. 20, 22). The ALJ also noted that during the hearing, Donte testified that he uses a computer daily to check his emails. *Id*. The ALJ then emphasized that Donte "did not allege any difficulty using the computer due to the light that projects from the screen, which could very well be expected given the light sensitivity that [he] alleges." *Id*. The ALJ made no effort to explain or support the perceived inconsistency between Donte briefly using a computer to check his emails and his light sensitivity. When asked "how much time do you spend on the internet either reading emails or ordering something that you need or browsing or whatever?," Donte answered: "Not that much, not that long." *Id*. at 69. Donte also testified that he had not been on Facebook or Instagram for "some months" and he wears tinted sunglasses when he watches television. *Id*. at 59, 69-70. Donte was not directly asked during the hearing whether he had difficulty using the computer to check emails because he is sensitive to light. Moreover, the record does not show that any of Donte's doctors recommended that he stop using the computer to briefly check his emails on a daily basis due to his light sensitivity.

Fifth, the last reason supplied by the ALJ for discrediting Donte's symptom testimony was inadequate. The ALJ faulted Donte for failing to provide an explanation for inconsistent statements about his alcohol and medical marijuana use. (R. 22). For example, the ALJ noted that Donte testified that he does not use illicit drugs, but treatment notes confirm he was using medical marijuana, namely Procana, "a cannabis extract with low THC ratio." *Id*. at 22, 66-68. The ALJ asked Donte about "street drugs, marijuana, cocaine, methamphetamines, heroin, anything like that?" *Id*. at 66. It is reasonable that Donte did not consider medical marijuana use to treat his seizures to be like a "street drug." In any event, the ALJ's focus on inconsistent statements about

18

alcohol or "marijuana use . . . is the kind of assessment of overall character or truthfulness prohibited by SSR 16-3p." *Alexandra A. A. v. Comm'r of Social Sec.*, 2020 WL 5705954, at *7 (S.D. Ill. Sept. 24, 2020). SSR 16-3p emphasizes that: "In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2017 WL 5180304, at *11 (Oct. 25, 2017). Instead, ALJs "must limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." *Id*; *see also Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (ALJs should not be "in the business of impeaching claimants' character," although they may still assess "the credibility of pain *assertions* by applicants.") (emphasis in original). Further, the ALJ did not consider that Donte's decision to use medical marijuana to treat his seizures may support his allegations. *See* (R. 601) (6/5/2017 – Donte reporting that his "sz has been increasing in frequency because he has been tak[ing] less of Procana THC+."); *Kellams v. Berryhill*, 696 F. App'x 909, 915 (10th Cir. 2017) (recognizing that claimant's various efforts to relieve his pain, including use of medical marijuana, "generally bolster, rather than detract from, the credibility of subjective complaints.").

Finally, *Elder v. Berryhill*, 774 F. App'x 980 (7th Cir. 2019), cited by the Commissioner, does not compel a different result. While it is true that "an ALJ may discount an applicant's testimony if ... other evidence in the record provides a basis for doing so," here, the ALJ ignored an entire line of evidence bearing on Donte's seizure disorder and the reasons given by the ALJ fail to substantially support her finding that Donte was not credible. *Id*. at 983.

19

For these reasons, the ALJ was patently wrong in her symptom evaluation as she provided insufficient reasons for discounting Donte's subjective symptom statements. This error alone justifies reversal and remand as Donte's testimony was not incredible on its face and the ALJ's decision to find him not disabled clearly depended on the credibility finding. On remand, the shall reevaluate Donte's subjective symptom allegations in accordance with SSR 16-3p and then reevaluate his RFC, considering all of the relevant evidence of record.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying Donte's application for disability insurance benefits is reversed and this case is remanded for further proceedings consistent with this opinion. The Clerk is directed to enter judgment in favor of Plaintiff Donte A. R. and against the Commissioner.

**SO ORDERED.**

Dated: December 9, 2020

_____
Sunil R. Harjani
United States Magistrate Judge